IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

ESTATE OF PAMELA KAY WILLIAMS,
DECEASED, BY AND THROUGH
ADMINISTRATOR, COOPER WILLIAMS, II
AND NEXT FRIEND, JEREMY A. WILLIAMS                                    PLAINTIFF

v.                                                         CIVIL ACTION NO: 3:17-CV-253-MPM-RP

MEGAN J. BRENNAN, POSTMASTER
GENERAL AND CHIEF EXECUTIVE
OFFICER OF THE UNITED STATES
POSTAL SERVICE, AND THE UNITED
STATES POSTAL SERVICE                                                  DEFENDANTS

**ORDER**

This cause comes before the court on the motion of defendants Megan J. Brennan, Postmaster General and Chief Executive Officer of the United States Postal Service (USPS), and the USPS itself, to dismiss this action, pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(4), 12(b)(5), and 12(b)(6).[1] Plaintiff Estate of Pamela Kay Williams, by and through administrator Cooper Williams II, has responded in opposition to the motion, and the court, having considered the memoranda and submissions of the parties, concludes that the motion should be granted in part and denied in part.

This is a Federal Tort Claims Act (FTCA) action arising out of a particularly tragic fact pattern. For the purposes of its motion to dismiss, defendant concedes the essential facts alleged by plaintiff in his complaint, as follows:

---

[1] This court will refer to defendants collectively as "defendant" since it seems clear that it is the liability of the United States which is at stake in this lawsuit.

1

> Pamela Kay Williams was an employee mail carrier of the United States Postal Service in Pope, Mississippi. (Docket 1, ¶ 7). Ms. Williams separated from her husband, Cooper Clemons Williams, on June 12, 2016. Id. at ¶ 8. On June 24, 2016, Ms. Williams received an Emergency Protection Order against her husband, alleging he threatened to kill her. Id. at ¶ 10. Ms. Williams presented the protective order to her superiors at USPS, and requested that she not be required to deliver mail to her estranged husband's residence. Id. at ¶ 14. USPS denied the request. Id. at ¶15. Ms. Williams filed for divorce on October 27, 2016, and told the USPS that if her husband saw her delivering mail to his house then he would kill her. Id. at ¶17. Again the USPS denied Ms. Williams' request. Id. at ¶ 18. While Ms. Williams delivered mail in Mr. Williams' neighborhood on December 23, 2016, Cooper Williams shot and killed her and then shot and killed himself. Id. at ¶ 20, 21.

[Defendants' brief at 2]. Based on these and other allegations, plaintiff filed the instant action in this court on December 18, 2017.

In its motion, defendant raises several grounds for dismissal, some of which have been conceded by plaintiff in his response. In particular, defendant argues, and plaintiff concedes, that various constitutional claims which are asserted in the complaint are not the proper subject of a FTCA action. It seems clear that the FTCA exists (as its name suggests) for the litigation of *tort* claims, and any constitutional claims which plaintiff sought to assert under 42 U.S.C. § 1983 and/or *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971) are improper and due to be dismissed under Fed. R. Civ. P. 12(b)(6). This court likewise concludes that any attempt by plaintiff to recover directly against the United States for the torts of assault and battery is barred by the FTCA. However, it seems clear that plaintiff's real argument in this context is that the government should be held liable for negligence or gross negligence in failing to protect her from the threat of harm by a third party. *See Sheridan v. United States*, 487 U.S. 392, 398, 108 S. Ct. 2449, 2454, 101 L. Ed. 2d 352 (1988)(observing that "it is both settled and undisputed that in at least some situations the fact that an injury was directly caused by an assault or battery will not preclude liability against the Government for negligently allowing the assault to occur.")

It thus appears that plaintiff does not actually dispute defendant's argument that it may not be held liable for the torts of assault and/or battery in this case, and this court will now turn to the dismissal arguments which are actually contested.

This court first considers defendant's motion, under Fed. R. Civ. P. Rule 12(b)(1), to dismiss this action for lack of jurisdiction, based on the discretionary functions exception in the FTCA. The FTCA imposes liability on the federal government "in the same manner and to the same extent as a private individual" for the negligent acts of federal employees acting within the scope of their employment. 28 U.S.C. § 2674; *see also Aretz v. United States*, 604 F.2d 417, 426 (5th Cir. 1979). This waiver of sovereign immunity is subject to several exceptions, including the discretionary functions exception which prohibits holding the government liable for:

> any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of the federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. §2680(a). Based on this retention of sovereign immunity in § 2680(a), courts lack subject matter jurisdiction over lawsuits based on discretionary functions.

A two-step inquiry determines if the discretionary functions exception applies. First, the court must determine whether the act or failure to act in question involves "judgment or choice." *United States v. Gaubert*, 499 U.S. 315 (1991). If a federal law, regulation, or policy provides mandatory requirements as to how any employee must act in a given situation, then the exception does not apply. *Id.* at 322. However, if the relevant statutory provisions leave to the judgment of the agency certain decisions regarding how to proceed, such that the agency is not bound to act in a particular way, then the exception is nevertheless applicable. *Id.* at 329, *citing Berkovitz v. United States*, 486 U.S. 531, 536 (1988).

3

If the court determines that the act involves judgment or choice, then it must determine whether the judgment or choice "is the type that the discretionary function is designed to shield." *Berkovitz*, 486 U.S. at 536. This inquiry determines whether decisions are grounded in social, economic, and public policy. *Id.* A government regulation giving government employees discretion creates a strong presumption that a discretionary act authorized by the regulation involves consideration of the same policies which led to the promulgation of the regulations. *Gaubert,* 400 U.S. at 324. *Gaubert* rejected the distinction between actions at the policy or planning level and those at the operation level. *Autery v. United States*, 992 F.2d 1523, 1527 (11th Cir. 1993). Rather, "[i]t is the nature of the conduct, rather than the status of the actor, that governs whether the discretionary function exception applies in a given case." *Id.* at 813 (*citing United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines).*

While the law in this context is rather well-established, there remain significant difficulties inherent in distinguishing discretionary from non-discretionary functions under the FTCA. One commentator has noted that "[t]he difficulty in applying this exception is in determining what constitutes a discretionary function, [and] . . . the line is often difficult to draw." Erwin Chemerinsky; <u>Federal Jurisdiction</u> § 9.2.3 at 668-69 (Sixth Ed.). This court certainly agrees with Dean Chemerinsky regarding the difficulties in applying the discretionary functions exception, and this difficulty is exacerbated by the fact that there appears to be little, if any, authority involving a factual scenario directly analogous to this one. Nevertheless, this is an issue of law which must be resolved by this court, and it will accordingly endeavor to do so.

In this case, this court does not doubt that the decision of whether to re-assign another employee to deliver mail at Cooper's house involved "judgement or choice," but it concludes

that the requested re-assignment was so limited in scope that it cannot be fairly characterized as a decision based on "social, economic, and public policy." As quoted previously, defendant concedes, for the purposes of this motion, plaintiff's description of the following facts:

> On June 24, 2016, Ms. Williams received an Emergency Protection Order against her husband, alleging he threatened to kill her. Ms. Williams presented the protective order to her superiors at USPS, and requested that she not be required to deliver mail to her estranged husband's residence. USPS denied the request. Ms. Williams filed for divorce on October 27, 2016, and told the USPS that if her husband saw her delivering mail to his house then he would kill her. Again the USPS denied Ms. Williams' request. While Ms. Williams delivered mail in Mr. Williams' neighborhood on December 23, 2016, Cooper Williams shot and killed her and then shot and killed himself.

[Id.].

It thus seems clear that there was *one house* in the town of Pope which Pamela requested that she be allowed to avoid on her mail delivery route: that of her ex-husband. Moreover, the threat cited by plaintiff as justifying re-assignment was that she would be murdered, and this perceived threat was bolstered by the existence of a protective order, which she showed to her employer. Indeed, defendant concedes that Pamela directly informed it that "if her husband saw her delivering mail to his house then he would kill her." Under these circumstances, it is difficult for this court to even articulate a public policy *argument* in favor of denying plaintiff's request, and at no point in defendant's brief does it even attempt to do so.

In its brief, defendant relies instead upon generic descriptions of the nature of postal delivery services, and it suggests that *any* decisions made in relation to that service, no matter how small, and no matter how lacking in any apparent justification, necessarily involve matters of public policy. Specifically, defendant argues that:

> In this case, the decision to allocate personnel on particular delivery routes is the type of judgment that the discretionary function was designed to shield. The Postal Service is charged with the responsibility of operating "as a basic and fundamental service provided to the people by the Government of the United States . . . [with] its basic

5

> function the obligation to bind the Nation together through the personal, educational, literary, and business correspondence of the people." 39 U.S.C. § 101(a). To achieve this goal, the Postal Service "shall provide prompt, reliable, and efficient services to partrons in all areas and shall render postal services to all communities." *Id.*
>
> Decisions concerning the configuration of mail delivery routes are part and parcel of what Congress described as ". . . the responsibility of the Postal Service to maintain an efficient system of collection, sorting, and delivery of the mail nationwide." 39 U.S.C. § 403(b)(1). Each decision made with regard to the level of delivery and service provided to a particular set of postal customers affects the economic efficiency of the Postal Service. Each type of residential postal delivery service has consequences for the Postal Service's economic efficiency. The myriad of administrative decisions of this sort made daily by Postal Service officials are exactly the type of decisions the discretionary function was designed to shield from review under the Federal Tort Claims Act. *Shrieve*, 16 F. Supp. 2d at 853. Therefore, step two of the DF test is met and plaintiff's complaint should be dismissed.

[Defendant's brief at 7-8].

Thus, defendant does not even attempt to explain the thought process which led it to determine that the threat to Pamela's life did not warrant what appears to be an extremely minor alteration to her delivery route. Moreover, it appears to this court that "the level of delivery and service provided to a particular set of postal customers" was not at issue in this case, since there was never any question of cutting off Cooper's mail service entirely. If Cooper had threatened to kill any postal employee who drove by his house, then this would provide defendant with a stronger argument that any decision not to cut off his service implicated issues of public policy. Given that Cooper's threats were directed at Pamela specifically, however, the question of whether to assign another employee to drive by his house strikes this court as simply being an internal staffing matter with no real social, economic or public policy implications.[2]

It is not at all clear to this court what public policy consideration required that Pamela, and Pamela alone, be the employee who had to drive each day by the house of the man who had

---

[2] This court will refer to these three considerations as "public policy" considerations, in the interests of brevity.

threatened to kill her, and defendant's arguments shed no light on this issue. In the absence of any stated justification, it seems likely that the decision not to adjust Pamela's route was a question of simple neglect rather than of any malice on the part of USPS managers. If simple inertia and inaction were, in fact, the reasons for this decision, then this would not strike this court as implicating matters of public policy. It is the job of any supervisor to determine which of his employees is best suited to perform a particular task, and supervisors are paid by the taxpayers to do this job. Thus, even assuming that modifying plaintiff's route would have required some degree of time and effort on the part of her supervisor[s], this court can discern no public policy implications arising from this fact. Moreover, if this court were to assume that Pamela's supervisors simply underestimated the threat posed by her ex-husband (despite her direct warnings), then that likewise would not appear to constitute a "public policy" decision, but rather a question of simple negligence.

In the court's view, the exceedingly limited nature of Pamela's request for re-assignment distinguishes this case from *Shrieve v. United States*, 16 F. Supp. 2d 853 (N.D. Ohio 1998), which is defendant's primary authority on this issue. In *Shrieve*, an Iowa district court concluded that the USPS's designation of curbside mail delivery for only one side of a residential roadway constituted a discretionary function within the meaning of the FTCA, and defendant argues that the same result should be reached here. *Shrieve*, 16 F. Supp. 2d at 855. In dismissing the FTCA claim of a plaintiff who was killed crossing the street to retrieve his mail, the Iowa district court wrote in *Shrieve* that:

> Decisions concerning the configuration of mail delivery routes are part and parcel of what Congress described as "... the responsibility of the Postal Service to maintain an efficient system of collection, sorting, and delivery of the mail nationwide." 39 U.S.C. § 403(b)(1). Each decision made with regard to the level of delivery and service provided to a particular set of postal customers affects the economic efficiency of the Postal Service. Each type of residential postal delivery service (door, box at curb, box across

7

street, cluster box at another location, or general delivery at a post office), has consequences for the Postal Service's economic efficiency, the safety of letter carriers and customers, and the satisfaction of postal patrons. The myriad of administrative decisions of this sort made daily by Postal Service officials are exactly the type of decisions the discretionary function exception was designed to shield from review under the Federal Tort Claims Act.

*Id.* at 859.

This court does not take issue with *Shrieve*'s analysis, but it concludes, for the reasons discussed previously, that the decision of whether to require Pamela specifically to deliver mail to the man who had threatened her life does not implicate considerations of public policy. This is particularly true considering that, once again, Pamela was not asking that Cooper be denied mail service altogether, and thus, no decision was requested which might affect "the level of delivery and service provided to a particular set of postal customers." The district court in *Shrieve* found that, in that case, there were strong public policy reasons for the postmaster to have required mail boxes to be placed on only one side of the road, writing that:

> In the instant case, Postmaster Smith determined that delivery along both sides of State Route 303 in Streetsboro would increase the danger to letter carriers. Smith's reasons for determining so appear in his attached declaration. Additionally, this delivery configuration allows the route to be completed more efficiently. Postmaster Smith's decision was thus grounded in social and economic policy.

*Id.* at 859-60.

In this case, by contrast, this court is aware of no rational reason, public-policy based or otherwise, why defendant would have denied Pamela's request that some other employee deliver mail to Cooper. Perhaps an explanation for the USPS's decision will be forthcoming at trial, but this court must decide the instant Rule 12 motion based upon the briefing before it, and defendant has offered this court no reason for its actions. Defendant appears to recognize that, in the context of a Rule 12(b)(1) motion to dismiss for lack of jurisdiction, it had every right to submit affidavits explaining its decision to deny Pamela's request for re-assignment. Indeed, on

8

page 3 of its brief, defendant cites *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) for the proposition that the court may grant a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction based on "the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." Thus, defendant clearly recognizes that it had the right to dispute plaintiff's version of the facts with its own, but it elected not to do so.

By contrast, the USPS cited extensive public-policy based reasons for its decision in *Shrieve*, and the district court relied upon those reasons, writing that:

> The postmaster had to weigh numerous social and economic factors in making his decision. The narrow berm on the roadway is not wide enough to allow the postal vehicle to safely pull off the road when depositing the mail. Providing curbside mailbox service only along the eastbound side of the roadway minimizes the number of stops that must be made in the 45 mile-an-hour roadway. Most importantly, it minimizes the number of downhill stops. On downhill slopes, postal drivers are especially vulnerable to 18 wheelers and other large trucks which might not be able to negotiate safely around the carrier's vehicle. This is especially true during times of inclement weather and on curves. The postmaster had to weigh the inherent danger to letter carriers who must stop at each mailbox along the section of State Route 303, regardless of traffic or weather conditions, with the danger posed to customers on the westbound side of State Route 303, who can wait until it is entirely safe to cross the roadway prior to retrieving their mail. The postmaster determined that delivery along both sides of State Route 303 would needlessly increase the danger to the letter carriers.

*Id.* at 860.

Given that defendant relies upon *Shrieve* so heavily in this case, its comparative silence regarding the reasons for its actions here seems quite telling. Defendant has done a quite thorough job briefing the legal issues in this case, and it therefore seems likely that its unwillingness to engage with plaintiff regarding the facts is based upon a recognition that the decision not to re-assign Pamela is exceedingly difficult to justify with any reasons, public-policy based or otherwise.[3] Regardless of the reasons for defendant's silence regarding its

---

[3] This court recognizes that it will serve as the ultimate trier of fact in this FTCA action, and it has not attempted to hide its initial evaluation of the facts of this case. Nevertheless, this court

actions in this case, this court concludes that the specific decision not to reassign some other employee to deliver mail in front of Cooper's house did not implicate issues of social, economic or public policy and does not constitute the sort of decision which Congress intended to immunize through the enactment of the discretionary functions exception. Defendant's Rule 12(b)(1) motion to dismiss for lack of jurisdiction on the basis of the discretionary functions exception will therefore be denied, and this court will turn to its other bases for dismissal.

This court now turns to defendant's second basis for seeking dismissal for lack of jurisdiction, based on plaintiff's alleged failure to exhaust remedies under the Federal Employees' Compensation Act (FECA). FECA is the federal government's workers' compensation scheme. Under FECA, federal employees receive compensation for work-related injuries without having to prove fault, and in exchange, they lose the right to sue their government employer in tort. *Lockheed Aircraft Corp. v. United States*, 460 U.S. 190, 194, 103 S.Ct. 1033 (1983). The statute's exclusive-remedy provision provides that:

> The liability of the United States or an instrumentality thereof under this subchapter or any extension thereof with respect to the injury or death of an employee is exclusive and instead of all other liability of the United States or the instrumentality to the employee ... because of the injury or death ... under a Federal tort liability statute.

5 U.S.C. § 8116(c).

In seeking dismissal based on plaintiff's failure to exhaust administrative remedies under FECA, defendant writes that:

> Plaintiff filed for FECA benefits on December 30, 2016 with the Department of Labor (DOL)1/2. DOL denied the preliminary claim on November 27, 2017. A plaintiff must file an appeal with the ECAB within one year of the OCWP's decision to have properly

---

will not reach a final decision on these issues until trial. In light of this order, plaintiff might well prefer that this court grant him summary judgment prior to trial, but it prefers to resolve fact issues such as the ones in this case based upon live testimony, during which it can evaluate the credibility of the witnesses.

10

exhausted administrative remedies. 20 C.F.R. § 10.607. The plaintiff then has "six months after the date of mailing" of the ECAB's notice of denial to file a proper FTCA claim against the United States. 28 U.S.C. § 2401(b). The time for plaintiff to seek administrative appeal rights does not end until after November 27, 2018. Therefore, plaintiff failed to exhaust administrative remedies and should be dismissed "because of the possibility that administrative review might obviate the need for judicial review." *Hodges v. Callaway*, 499 F.2d 417, 423 (5th Cir. 1974). Accordingly, plaintiff's complaint must be dismissed pursuant to the Fed. R. Civ. P. 12(b)(1).

[Defendant's brief at 12-13].

In the court's view, the most important sentence in the above argument is defendant's assertion that "the plaintiff then has 'six months after the date of mailing' of the ECAB's notice of denial to file a proper FTCA claim against the United States." [*Id.*] Thus, defendant does not dispute that it would be proper for plaintiff to file an FTCA claim after *unsuccessfully* seeking to obtain FECA benefits,[4] but it argues that he should have waited until the time for seeking an administrative appeal had passed on November 27, 2018 before filing suit. However, the *Hodges v. Callaway* decision which defendant cites for this proposition did not involve FECA at all, but, rather, was concerned with a soldier's appeal of a decision to give him a dishonorable discharge from the military. *Hodges*, 499 F.2d at 418-19. This court therefore does not regard defendant's position as being adequately supported by authority.

In response to defendant's argument, plaintiff writes that:

Plaintiffs must file an appeal with the ECAB to have properly exhausted administrative remedies, but §10.607 merely proscribes the methods for requesting reconsideration of a final denial. The Notice of Decision and Appeal Rights issued to plaintiffs is "final and conclusive for all purposes with respect to all questions of law and fact". 5 U.S.C. § 8102(a); 20 C.F.R. 10.600 (Specifically noting the OWCP's denial of benefits as a "final denial"). Thus, it cannot be said that compensation is available to Plaintiffs under FECA. As compensation is not available to Plaintiffs under FECA, they have sufficiently exhausted administrative remedies are not precluded from bringing suit under the Federal Tort Claims Act.

---

[4] It seems clear that, if plaintiff had actually obtained FECA benefits in this case, that would have represented his sole available recovery.

11

[Plaintiff's brief at 9]. In its reply brief, defendant appears to partially concede plaintiff's argument and to shift its own position to a contention that this court may not review, in this action, the Office of Workers' Compensation Programs' (OCWP) denial of plaintiff's claim for FECA benefits. Specifically, defendant argues that:

> Defendant does not dispute the language contained in 5 U.S.C. § 8128(b), but would note that subpart (2) states that the Secretary of Labor denying payment is "not subject to review by another official of the United States or by a court by mandamus or otherwise." 5 U.S.C. § 8128(b)(2). Therefore, OWCP's denial of benefits is not reviewable by this court, and this court lacks jurisdiction to review the denial.

[Reply brief at 7].

While this court tends to agree with defendant that it would lack jurisdiction to review the OWCP's denial of FECA benefits, its reading of plaintiff's complaint is that it simply asserts FTCA claims and does not constitute an appeal of the denial of his claim for FECA benefits. It thus appears that defendant is raising a strawman argument of sorts on this issue, and, as noted previously, it has conceded that the law permits plaintiff to seek recovery under the FTCA after unsuccessfully seeking benefits under FECA.[5] Defendant has provided this court with no basis for concluding that it lacks jurisdiction over plaintiff's claims based on his prior, unsuccessful, claim for FECA benefits, and its Rule 12(b)(1) motion will therefore be denied.

This court now turns to defendant's motion to dismiss based on plaintiff's failure to properly serve process in this case. In seeking dismissal on this basis, defendant writes that:

> When a United States agency is a party, Fed. R. Civ. P. 4(i) requires that a copy of the summons and complaint must be served on (1) The United States Attorney for the district where the action is brought; (2) the Attorney General of the United States in Washington, D.C.; and (3) the United States agency. See Fed. R. Civ. P. 4(i)(1(A)(i),

---

[5] This court observes that, as of the writing of this order, the November 27, 2018 deadline for plaintiff to appeal the denial of his claim for FECA benefits has passed. Based on plaintiff's briefing, this court assumes that plaintiff made no further attempts to appeal the denial of his claim for FECA benefits. If this assumption is somehow incorrect, then the parties should promptly notify this court of this fact, so that it may re-consider dismissing the action.

12

4(i)(1)(B), and 4(i)(2). Plaintiffs failed to have a summons issued against the United States Attorney General. Process was therefore insufficient and the defendants are entitled to dismissal. Furthermore, plaintiffs failed to serve the Attorney General of the United States. Consequently, plaintiffs' complaint should be dismissed for insufficiency of service of process because they failed to properly serve the summons and complaint, and 90 days have elapsed since the complaint was filed. See Fed. R. Civ. P. 4(m).

[Defendant's brief at 8]. In response, plaintiff's counsel concedes that he erred in failing to serve process upon the Attorney General, but he notes that this error has now been corrected. Moreover, plaintiff emphasizes that he did, in fact, serve process upon both the US Attorney located in Oxford and upon the Postmaster General. [Brief at 10].

Plaintiff argues that, given that he served process upon the US Attorney, the law requires this court to grant him an opportunity to also serve process upon the Attorney General. Specifically, plaintiff argues that:

> "The court must allow a party a reasonable time to cure its failure to: (A) serve a person required to be served under Rule 4(i)(2), if the party has served either the United States attorney or the Attorney General of the United States." Fed. R. Civ. P. 4 Notice of Advisory Committee on Rules – 1993 Amendment; Fed. R. Civ. P. 4(i)(4)(A) (emphasis added). As defendants listed in the Complaint include a United States agency and a United States officer, service requirements fall under 4(i)(2). Process has already been served by certified mail on both the Postmaster General and the United States Attorney for Oxford, MS, sufficient for Rule 4(i)(4)(A) to apply. The court must allow Plaintiffs reasonable time to cure its failure to properly serve Defendants by serving process on the Attorney General of the United States. *See, Fair v. Hinds County Economic Assistance*, 2016 WL 55341 at *3 (N.D. Miss 2016); *Alvarez v. Dept. of the Army*, 2017 WL 3592447 at *6 (W.D. Tex. 2017); *Colomb v. Grayson,* 2009 WL 688593 (W.D. La. 2009). As of this filing, a Summons and Complaint have been mailed to the Attorney General, Department of Justice, Washington, DC to cure this oversight.

[Plaintiff's brief at 10].

In its reply brief, defendant fails to address plaintiff's authority cited above, which does appear to support granting him additional time to serve process on the Attorney General, considering that he already served process upon the US Attorney. This court finds particularly persuasive Judge Aycock's decision in *Fair*, where she allowed twenty-one additional days to

13

serve process, where the record demonstrated that the plaintiff had served one, but not all, of the required parties under Rule 4(i). *Fair*, 2016 WL 55341 at *3. Once again, defendant does not attempt to distinguish *Fair* or any of the other decisions relied upon by plaintiff on this issue, and its motion to dismiss for failure to serve service of process will therefore be denied. In this case, plaintiff represents that he has already corrected his oversight in originally failing to serve process upon the Attorney General, and it is accordingly unnecessary for this court to grant him additional time to do so.

As a final point, this court would observe that this case is one which the parties should be able to settle. Legalistic defenses aside, this court is of the view that the government has every *moral* obligation to provide some compensation to Pamela's heirs, assuming that it does not have any greater substantive defense to plaintiff's claims than it has shown in its briefing to date. This is a case in which Pamela, a USPS employee, lost her life while performing her official duties, after she pleaded with her supervisors not to force her to deliver mail in front of the house of the man who had threatened to kill her. Defendant has provided this court with no explanation for its decision to deny plaintiff's request, and it frankly seems doubtful that adequate explanation could exist.

Under these circumstances, it is very much unclear to this court why the government would not feel morally bound to offer some compensation to Pamela's heirs for their loss. At the same time, this court acknowledges that it may only address matters where it has jurisdiction to do so. While this court believes that its ruling on the discretionary functions exception is correct, it acknowledges that this issue is a somewhat close and difficult one, and it is certainly possible that the Fifth Circuit would see it differently. Accordingly, plaintiff should recognize that, regardless of this court's stated sympathy for his position in this case, significant legal obstacles

exist to any final recovery in this case. Given these competing considerations, it appears to this court that both sides should find it in their interests to consult in good faith in order to determine whether an amicable resolution of this case is possible.

It is therefore ordered that defendant's motion to dismiss is granted in part and denied in part.

This, the 4th day of March, 2019.

/s/ Michael P. Mills
U.S. DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI